WHISTLEBLOWER PARTNERS LLP
Ari Yampolsky (CA Bar No. 290753)
4 Embarcadero Center, Suite 1400
San Francisco, CA 94111
ari@whistleblower.law
415-707-6855

*Attorney for Relator Amy Fasso*

**FILED**
**Aug 30, 2024**
CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

**SEALED**

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF CALIFORNIA**
**SACRAMENTO DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, STATE OF CALIFORNIA, and STATE OF NEVADA<br><br>ex rel. AMY FASSO,<br><br>Plaintiff-Relator,<br><br>v.<br><br>RENOWN HEALTH; RENOWN REGIONAL MEDICAL CENTER; RENOWN SOUTH MEADOWS MEDICAL CENTER; and RENOWN HEALTH CARE CENTER,<br><br>Defendants. | NO. 2:24-cv-2356 DJC JDP<br><br>COMPLAINT AND JURY DEMAND<br><br>**Filed Under Seal**<br>pursuant to<br>31 U.S.C. § 3730(b)(2) |

**NATURE OF THE ALLEGATIONS**

1. Relator Amy Fasso brings this action on behalf of herself, the United States of America, the State of California, and the State of Nevada against Defendants Renown Health; Renown Regional Medical Center; Renown South Meadows Medical Center; and Renown Health Care Center, for violations of the federal False Claims Act, 31 U.S.C. §§ 3729 *et seq*.; the California False Claims Act, Cal. Gov't Code §§ 12651 *et seq.*; the Nevada False Claims Act, Nev. Rev. Stat. Ann. §§ 357.040 *et seq.*; and the California Insurance Frauds Prevention Act, Cal. Ins. Code §§ 1871 *et seq.* ("CIFPA").

2. Defendants and their individual physicians engaged in a systematic scheme to defraud the governments of the United States, California, and Nevada, and commercial insurers in the state of California, by fraudulently billing government-funded healthcare programs and commercial insurers for Evaluation and Management ("E/M") office visit services performed as part of and in conjunction with medical procedures. The E/M services were not properly billable separately because, pursuant to billing and coding rules, payment for the office visits were included in the bundled payment for the associated procedure.

3. To evade these established billing and coding rules, Defendants routinely and fraudulently used a coding modifier (Modifier 25) to falsely claim that E/M services were significant and separately identifiable from the medical procedure being billed.

4. Relator was trained to add Modifier 25 in every instance where it was necessary to bill for the E/M service along with a procedure code without consideration for whether a significant and separately identifiable office visit occurred.

5. Defendants ignored Relator's repeated warnings that this was an improper use and overutilization of Modifier 25.

## JURISDICTION AND VENUE

6. This Court has jurisdiction over this action pursuant to 31 U.S.C. § 3732(a)-(b) and 28 U.S.C. §§ 1331, 1345.

7. Venue is proper in this district under 28 U.S.C. § 1391(b) and 31 U.S.C. § 3732(a), as violations of the False Claims Acts and CIFPA described herein occurred in this district, including the treatment of beneficiaries residing in this district and the submission of claims to Medi-Cal and commercial insurance entities located in this district.

## PARTIES

8. Defendant Renown Health is the largest locally owned not-for-profit healthcare network in northern Nevada. According to its website, it is "the region's only Level II Trauma Center, serving more than 1 million people and a 100,000 square mile reach – across Nevada, Lake Tahoe and eastern California."

9. Renown Health has a principal address of 1155 Mill St., Mail Code Z7, Reno, NV 89502.

10. Defendants Renown Regional Medical Center, Renown South Meadows Medical Center, and Renown Health Care Center operate as subsidiaries under the Renown Health umbrella. It is claims submitted by Renown Health for services provided at these facilities, at least, that are the basis for this action.

11. Renown Regional Medical Health Center is a Disproportionate Share Hospital, which means that it serves a high proportion of Medicare and Medicaid patients. In 2022, Renown Regional's DSH percentage, which reflects the number of low-income Medicare and Medicaid patients an organization serves, was 19.01% – which qualified the hospital to participate in the 340B drug pricing program.

12. Relator Amy Fasso worked for Renown Health from November 2023 through February 2024 as a Revenue Integrity Coordinator. However, as explained below, her job duties were more similar to a Revenue Integrity Specialist, i.e., she reviewed NCCI edits and modifiers for billing accuracy.

## THE FALSE CLAIMS ACTS

13. The federal False Claims Act (FCA) was originally enacted during the Civil War. Congress substantially amended the FCA in 1986—and again in 2009 and 2010—to enhance the ability of the federal government to recover losses sustained as a result of fraud committed against it. Congress amended the FCA after finding that fraud in federal programs was pervasive and that the FCA, which Congress characterized as the primary tool for combating government

fraud, required modernization. Congress intended the amendments to create incentives for individuals with knowledge of fraud against the government to disclose the information without fear of reprisals or government inaction, and to encourage the private bar to commit legal resources to prosecuting fraud on the government's behalf.

14. In relevant part, the FCA prohibits: (a) knowingly presenting, or causing to be presented, a false or fraudulent claim to the federal government for payment or approval; (b) knowingly making or using, or causing to be made or used, a false record or statement material to a false or fraudulent claim; (c) knowingly making, using, or causing to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the government, or knowingly concealing or knowingly and improperly avoiding or decreasing an obligation to pay or transmit money or property to the government; and (d) conspiring to violate these provisions. 31 U.S.C. § 3729(a)(1)(A), (B), (C), (G).

15. "Knowingly" means that a person, with respect to information, "(i) has actual knowledge of the information; (ii) acts in deliberate ignorance of the truth or falsity of the information; or (iii) acts in reckless disregard of the truth or falsity of the information." *Id*. § 3729(b)(1)(A).

16. A record or statement is "material" if it "ha[s] a natural tendency to influence, or [is] capable of influencing, the payment or receipt of money or property." *Id*. § 3729(b)(4).

17. Any person who violates the FCA is liable for a civil penalty of up to $27,894 for each violation, plus three times the amount of the damages sustained by the United States. The FCA allows any person having information about an FCA violation to bring an action on behalf of the United States, and to share in any recovery.

18. The FCA requires the Complaint to be filed under seal for a minimum of 60 days (without service on the defendant during that time) to allow the government time to conduct its own investigation and to determine whether to join the suit.

19. The California and Nevada False Claims Acts prohibit similar conduct as that prohibited

by the federal FCA (*see* Cal. Gov. Code § 12651(a); Nev. Rev. Stat. Ann. § 357.040(1)), allows relators to bring an action on the respective State's behalf (Cal. Gov. Code § 12652(c)(1); Nev. Rev. Stat. Ann. § 357.080), and provides analogous remedies to those provided in the federal FCA (*see* Cal. Gov. Code § 12651(a); Nev. Rev. Stat. Ann. § 357.040(2)).

20. The California Insurance Fraud Prevention Act also prohibits similar conduct as that prohibited by the federal FCA and the State FCAs, but does so with respect to fraud against commercial insurers (*see* Cal. Ins. Code §§ 1871 *et seq.*), allowing relators to civilly enforce provisions of the California Penal Code that bar the submission of false claims for payment under a "contract of insurance" and providing analogous remedies to those provided in the federal and California FCA.

## GOVERNMENT HEALTHCARE PROGRAMS

21. Title XIX of the Social Security Act, 42 U.S.C. §§ 1396 *et seq.* establishes the Medicaid program, a federally assisted grant program for the States. Medicaid enables the States to provide medical assistance and related services to needy individuals. Within broad federal rules, each state decides who is eligible for Medicaid, the services covered, payment levels for services and administrative and operational procedures.

22. The Medicare program is comprised of four parts. Medicare Part A ("Hospital Insurance") provides basic insurance for the costs of hospitalization and post hospitalization care. 42 U.S.C. §§ 1395c-i-5. Medicare Part B ("Medical Insurance") is a federally subsidized, voluntary insurance program that covers the fee schedule amount for doctors' services, outpatient care, medical supplies, and laboratory services. 42 U.S.C. §§ 1395j-w-5. Medicare Part C ("Medicare Advantage Plans") is a plan offered by private insurers that contract with Medicare to provide Part A and Part B benefits. 42 U.S.C. §§ 1395w-21-w-28. Medicare Part D ("Prescription Drug Coverage") is a plan offered by private insurers approved by Medicare to provide basic insurance for prescription drugs. 42 U.S.C. §§ 1395w-101-w-154.

23. Reimbursement for Medicare Part A claims is made by the United States through CMS. Hospitals submit Medicare Part A claims directly to CMS, which in turn makes a standard, bundled payment based on a DRG diagnostic code.

24. Reimbursement for Medicare Part B claims is made by the United States through CMS. CMS, in turn, contracts with fiscal intermediaries to administer and pay Medicare Part B claims from the Medicare Trust Fund. 42 U.S.C. § 1395(u). In this capacity, the fiscal intermediaries act on behalf of CMS. 42 C.F.R. § 421.5(b). Separate payments are made for each CPT procedural code listed on the Medicare Part B claims. *See* 45 C.F.R. §§ 162.1000, 162.1002, 162.1011, adopting the Current Procedural Terminology Coding Manual published by the American Medical Association (the "CPT Manual").

25. Reimbursement for Medicare Part C claims is made by the United States through CMS. CMS makes fixed monthly payments to each Medicare Advantage Organization for each enrolled individual, i.e., a capitated payment. *See Cares Cmty. Health v. U.S. Dep't of Health & Hum. Servs.*, 944 F.3d 950, 953 (D.C. Cir. 2019); *see generally* 42 U.S.C. §§ 1395w-21 to -28. These private insurers are government contractors and submitting a false claim to a Part C insurer is a violation of the FCA. *See United States ex rel. SW Challenger, LLC v. EviCore Healthcare MSI, LLC*, No. 19 Civ. 2501 (VM), 2021 WL 3620427, at *9 (S.D.N.Y. Aug. 13, 2021). Medicare reimburses healthcare providers, either directly or through a managed care program, for the costs of providing covered health services to Medicare beneficiaries. *See* 42 U.S.C. § 1395x(v)(1)(A).

26. To administer the Medicare program, private companies act as agents of HHS called Medicare Administrative Carriers or "MACs," making payments on behalf of the program beneficiaries and providing other administrative services and coverage determinations. 42 U.S.C. §§ 1395h and 1395u.

27. Noridian Healthcare Solutions ("Noridian") is the MAC for Part B Medicare claims in Jurisdiction E, including California and Nevada.

28. Title XIX of the Social Security Act, 42 U.S.C. §§ 1396 *et seq.* establishes the Medicaid program, a federally assisted grant program for the States. Medicaid enables the States to provide medical assistance and related services to needy individuals. Within broad federal rules, each state decides who is eligible for Medicaid, the services covered, payment levels for services and administrative and operational procedures.

29. States sometimes partially delegate administration of Medicaid to Care Management Organizations ("CMOs"), which administer health plans and process and pay Medicaid claims to their contracted providers. The State reimburses the CMO through capitation fees that are determined, in part, by the CMOs expenditures on patient care. The CMOs are state government contractors, and claims made to the CMOs are for money that is spent or used on the State's behalf or to advance a State program or interest.

30. TRICARE is a government-funded program that provides medical benefits to retired members of the Uniformed Services and to spouses and children of active duty, retired, and deceased members, as well as reservists who were ordered to active duty for thirty (30) days or longer. The program is administered by the Department of Defense and funded by the federal government.

31. Together, the programs described above, and any other government-funded healthcare programs, are referred to as "Government Healthcare Programs."

32. Government Healthcare Programs may act as a primary payer or a "secondary payer," meaning that it will pay costs that the primary payer does not, including deductibles and copayments.

33. Government Healthcare Programs and commercial insurance providers are collectively referred to herein as "Insurers."

**THE PROPER USE OF MODIFIER 25 WITH E/M CODES**

34. Typically, when an Insurer pays a medical provider for having performed a procedure, the preoperative and postoperative care associated with the procedure is reimbursed through a single, global payment. *See, e.g.,* Medicare Claims Processing Manual, Chapter 12, § 40.2(A)(8). Under this system, the services that are contemplated as normal and expected in providing the procedure are bundled into a single CPT code, and the provider is reimbursed at a rate that has been established for the comprehensive care of the procedure.

35. Providers may not bill separately for such care, or any other services related to the procedure, using an E/M code. Medicare and other Insurers' payment systems will typically deny payment for an E/M service that overlaps with the global procedure code. However, providers may bill for an E/M office visit performed on the same day as the procedure if the care provided during that E/M visit is "for a significant and separately identifiable E/M service that is above and beyond the usual pre- and post-operative work of the procedure." *See, e.g.,* Medicare Claims Processing Manual, Chapter 12, § 30.6.6(b). To indicate that the E/M visit is "significant" and "separately identifiable," the provider must attach Modifier 25 to the E/M service code.

36. Modifier 25 is defined in Appendix A of the 2023 CPT Manual as follows:

> **Significant, Separately Identifiable Evaluation and Management Service by the Same Physician or Other Qualified Health Care Professional on the Same Day of the Procedure or Other Service:** It may be necessary to indicate that on the day a procedure or service identified by a CPT code was performed, the patient's condition required a significant, separately identifiable E/M service above and beyond the other service provided or beyond the usual preoperative or postoperative care associated with the procedure that was performed. A significant, separately identifiable E/M service is defined or substantiated by documentation that satisfies the relevant criteria for the respective E/M service to be reported…. The E/M service may be prompted by the symptom or condition for which the procedure and/or service was provided. As such, different diagnoses are not required for reporting of the E/M services on the same date. This circumstance may be reported by adding modifier 25 to the appropriate level of E/M service.

37. Noridian has published guidance explaining that Modifier 25 is used for "Significant, separately identifiable Evaluation and Management (E/M) by the same physician or other

qualified health care professional on the same day of the procedure or other service. A significant, separately identifiable E/M service is defined or substantiated by documentation that satisfies the relevant criteria for the respective E/M service to be reported."[1] It further explains that it is an "Incorrect Use" to use Modifier 25 "when documentation shows amount of work performed is consistent with that normally performed with procedure."

38. For example, Medicare NCCI Coding Policy Manual, Chapter 11, Section J2 explains when, with regards to spirometry, it is appropriate and inappropriate to append Modifier 25 to an E/M code:

> If a physician in attendance for pulmonary diagnostic testing or therapy obtains a limited history and performs a limited physical examination related to the pulmonary testing or therapy, separate reporting of an E&M service is not appropriate. If a significant, separately identifiable E&M service is performed unrelated to the performance of the pulmonary diagnostic testing or therapy, an E&M service may be reported with modifier 25.

39. Since 2023, some Insurers—such as Anthem Blue Cross's Medi-Cal Managed Care program[2]—have advised that it is *never* appropriate to append Modifier 25 to CPT code 99211—generally applied to office visits performed by nurses or medical assistants—because Modifier 25 requires the E/M service to meet a higher complexity level of care than a service represented by 99211.

40. Accordingly, the fraudulent inclusion of Modifier 25 is material to getting claims for E/M services paid when billed in conjunction with a procedure code.

41. The Government has previously intervened in and settled False Claims Act cases alleging

---

[1] *Modifier 25*, Noridian Healthcare Solutions, https://med.noridianmedicare.com/web/jeb/topics/modifiers/25 (last updated Dec. 18, 2023).

[2] Anthem Blue Cross, *Reimbursement Policy Number G-06003* (effective Apr. 14, 2023), https://providers.anthem.com/docs/gpp/california-provider/CA_CAID_RP_Modifiers25and57.pdf.

systemic overuse of Modifier 25 in claims to Medicare, including *United States ex rel. Cesare v. Skyline Urology*, No. 1:16-cv-04059-JKB (D. Md.) ($1.85 million settlement); *United States ex rel. Tyson v. Georgia Pain Management, P.C. et al.*, No. 1:18-cv-5520 (N.D. Ga.) ($625,000 settlement); and *United States ex rel. Lee v. Tarrant County Hospital District*, No. 4:19-cv-00412-P (N.D. Tex.) ($3.3 million settlement), evincing materiality.

## FACTUAL ALLEGATIONS

***Defendants Abuse Modifier 25 to Bill for Evaluation & Management Services***

42. Renown Health, when billing for outpatient services provided by its facilities, engages in a pattern and practice of adding Modifier 25 to E/M codes when they are billed with certain CPT codes without consideration for whether the E/M services were significant and separately identifiable from the procedures.

43. When entering their notes, providers select the CPT codes in the Epic EHR software to reflect the services that were provided. This frequently includes an E/M code.

44. If an E/M code is coded with a procedure on the same visit, Epic displays an error message known as an "edit" that says that Modifier 25 is necessary to bill the E/M code.

45. Although the edit defines Modifier 25 as being for a "significant separate E&M service," the Revenue Integrity staff is instructed by Renown Health management to add Modifier 25 without reviewing the patient notes for a significant separate E/M service.

46. Relator Fasso recognized that Modifier 25 was being added almost universally to E/M codes billed contemporaneously with a Type S or T procedure code, without a review of the patient records (which, for many procedures, did not exist or at least were not shared with Revenue Integrity) or determination that a significant, separately identifiable E/M service occurred. These included E/M codes 99202-99205 (new patient visits), 99211-99215 (established patient visits), 99281-99285 (emergency department visits), and G0463 (facility visits).

47. Some of the procedure codes routinely billed with an E/M code and Modifier 25 by Renown Health were for procedures where patients would come for routine treatment and/or services provided by a medical assistant or nurse without a separate examination by a qualified health care professional (usually billed under CPT code 99211) and/or the E/M service was part and parcel of the procedure, including the following:

- Vaccine/Immunization Administration: 90460-90474, G0008-G0010
- Drug Administration: 96360-96379
- Chemotherapy Administration: 96401-96425
- Pulmonary Testing (Spirometry): 94010-94799
- Removal of Impacted Cerumen: 69209-62910
- Pap Smear: Q0091
- Recurring Wound Care: 97602-97608

48. Valerie Shipman, a Revenue Integrity Coordinator, trained Relator Fasso upon her arrival at Renown Health. She told Relator that whenever the Epic software showed an "edit" indicating that Modifier 25 was necessary to code for both a procedure and office visit, Relator Fasso should add Modifier 25 so that the E/M service could be billed. She told Relator Fasso that this is what the error message was instructing them to do. In particular, Shipman stressed that emergency department visits (CPT codes 99282-99285) always warranted a Modifier 25.

49. Shipman gave Relator Fasso spreadsheets created by former Revenue Integrity Coordinator Roger Stevens to use as "cheat sheets" during her training. The spreadsheets instructed that when there is an edit because an Emergency Department visit (CPT code 9928x) is billed on the same day as a Type S or T procedure, to "Select E/M charge- correct by adding 25 modifier." Similarly, the spreadsheets instructed that when there is an edit because an outpatient medical visit is billed on the same day as vaccine administration (CPT code 90471), to "Select E/M charge- correct by adding 25 modifier." The spreadsheets said nothing about

reviewing the patient notes and determining if a significant, separately identifiable E/M occurred in these instances.

50. Relator Fasso had previous experience with Modifier 25 from a previous job. There, the standard procedure had been to remove the office visit unless it could be established from the patient notes that there had been a significant, separately identifiable E/M service. Relator Fasso explained to Shipman that it was not appropriate to universally bill Modifier 25 without such a review. Shipman adamantly disagreed with her, and from then on, she was hostile and disrespectful to Relator Fasso.

51. Relator Fasso was also trained by Revenue Integrity Specialist Lani Sovey and Master File Specialist Catherine Green. She received these same instructions from Sovey and Green. Green, like Shipman, emphasized the importance of appending Modifier 25 to emergency department visits coded with procedures.

***<u>Example: Vaccine Administration</u>***

52. One example, a United Healthcare Nevada Medicaid beneficiary's vaccination on January 31, 2024 was coded with CPT code 90471—vaccine administration, billed for $22—and 99211—a Level 1 office visit, billed for $166.

53. Another example, Nevada Fee For Service Medicaid beneficiary was coded for a vaccine administered on January 18, 2024 with CPT codes 90471 and 99211.

54. Epic displayed an edit stating that to bill both CPT codes 90471 and 99211, "an appropriate NCCI modifier" is required.

55. According to the Medicare NCCI Coding Policy Manual, Chapter 11, it is inappropriate to submit both of these codes for a single visit even if the E/M was for a significant, separately identifiable service, since 99211 is generally a service performed by a nurse or medical assistant and not a qualified health care professional (as is likely the case for the administration of a vaccine):

> Similar to drug and chemotherapy administration CPT codes, CPT code 99211 (Evaluation and management service, office or other outpatient visit, established patient, level I) is not separately reportable with vaccine administration HCPCS/CPT codes 90460-90474, G0008-G0010. Other E&M CPT codes are separately reportable with a vaccine administration code if the E&M service is significant and separately identifiable, in which case the E&M CPT code may be reported with modifier 25.

56. Novitas and other MACs similarly advise providers "Do not use modifier 25 with CPT code 99211" and "Do not use modifier 25 when documentation does not support a significant, separately identifiable E/M service."[3]

57. Nevertheless, it was standard operating procedure at Renown Health to add Modifier 25 in these instances so that the E/M code could be billed.

***<u>Example: Chemotherapy Administration With an IV</u>***

58. Another example, where the patient was a beneficiary of the Medicare Advantage plan Senior Care Plus, service date January 30, 2024, the administration of chemotherapy was coded with CPT code 96413—chemotherapy administration with an IV, billed for $2,279—and CPT code G0463—a hospital outpatient clinic visit, billed for $409.

59. Chemotherapy IV treatments often involve patients coming in multiple times per week and receiving the treatment without ever speaking to a qualified health care professional.

60. The edits for this patient advised that Modifier 25—signifying a "significant separate E&M service"—was necessary for billing CPT code G0463 on the same day as a Type T or S procedure, such as CPT code 96413.

61. According to the Medicare Claims Processing Manual, Ch. 12, Sec. 30.5F, MACs should not reimburse CPT code 99211, with or without modifier 25, when it is billed with a

---

[3] *See Modifier 25 fact sheet*, Novitas Solutions, https://www.novitas-solutions.com/webcenter/portal/MedicareJH/pagebyid?contentId=00097341 (last updated Apr. 16, 2024).

nonchemotherapy drug infusion code, a chemotherapy administration code, or a diagnostic or therapeutic injection code. Other E/M codes may be billed using Modifier 25 if they meet certain requirements, including that the E/M is significant and separately identifiable from the drug administration or infusion. *Id.*; *see also id.*, Ch. 12, Sec. 30.6.6D

62. Nevertheless, it was standard operating procedure at Renown Health to add Modifier 25 in this instance so that the E/M code could be billed.

***Relator's Attempts to Raise the Issue With Her Peers and Supervisors***

63. Relator Fasso believed that the staff and management at Renown Health simply did not understand the proper way to use Modifier 25, and so she sought to correct the improper usage by educating them.

64. Relator Fasso tried addressing the issue with Steve Biczak, Revenue Integrity Supervisor, who was supposedly in charge of the Revenue Integrity department. However, he admitted to her that he was unfamiliar with NCCI edits and simply told her not to worry about it.

65. Relator also spoke to Sovey, the Revenue Integrity Specialist she was working with while training. Sovey had been primarily responsible for resolving edits by adding Modifier 25 for many years. She told Relator Fasso that she was just doing as she had been instructed by her former supervisor, Liana Fontano, which was to "just do what the edit says."

66. On January 24, 2024, Relator Fasso emailed Karla Kennedy (Lead Revenue Integrity Coordinator)—copying Valerie Shipman, Lani Sovey, Steve Biczak (Revenue Integrity Supervisor), Mea Ford (Vice President of Revenue Cycle), and Catherine Green (Master File Specialist) about her understanding that CPT code 99211 could not be reported with certain vaccination administration codes (CPT codes 90460-90474, G0008-G0010), with or without a modifier. She included the relevant section from the Medicare NCCI Coding Policy Manual, Chapter 11.

67. Later that day, Sovey responded that she had similar questions about the edit, explaining "The Specialist[s] have been instructed to add the **25** modifier on the **99211** as well as any of the other e/m's with procedures. This too, is what was placed on the Claim Edit WQ Instruction Spreadsheet," i.e., one of the "cheat sheets" created by the department supervisors.

68. Kennedy never replied to the emails, but on January 25, Shipman replied to all that 99211 could be billed with CPT code 90471 "if certain things happened during the patients [sic] office visit." She provided screenshots of CPT Assistant that explained that 99211 could be used "when a nurse under the physician's supervision reviews the patient's chart, takes the child's blood pressure and temperature, provides vaccine information, instructions and consent forms to the parent and prepares the vaccine product prior to the administration of the vaccine." This response did not address Sovey's original question—should she universally add Modifier 25 to the E/M codes when billed with other procedures?

69. Green forwarded one of Relator Fasso's emails to Ayla Ferguson, Renown Health's HIM Manager of Coding. On February 1, 2024, Ferguson responded that when billing for administration of a vaccine (CPT code 90471) by a medical assistant, rather than a provider, it would not be appropriate to add Modifier 25 to 99211 if "the visit is only for vaccines."

70. When Relator asked Green about Ferguson's response, Green told her it did not make sense to her and so she was going to continue using Modifier 25 to bill 99211 with vaccine administrations and that Relator should do the same.

71. However, to Relator's knowledge, the Revenue Integrity team continued to routinely add Modifier 25 to 99211 when coded with vaccinations.

72. Relator Fasso also spoke with Catherine Green about the Modifier 25 issue on a number of occasions. For example, on February 5, 2024, Relator Fasso sent Green an email with a link to a YouTube video about how to bill CPT code 99211, including discussion of Modifier 25. The video discusses, for example, billing E/M with a vaccine administration code. It explains (citing

AMA support and Medicare NCCI 2022 Coding Policy Manual, Chapter 11) that it is impermissible to use a modifier with E/M when billing a vaccine administration code. Relator Fasso asked Green several times if she had watched the video, but she never did.

73. Eventually it became clear that Green was not supporting her or her interpretation of proper usage of Modifier 25. On one occasion, Green said something to her like "think of all the money we would lose if we weren't billing flu shots and office visits." On another, Green told her not to "go down a rabbit hole" when she had questions about NCCI edits.

74. Additionally and specifically, Relator Fasso spoke with Green about the use of Modifier 25 for E/M billed with pulmonary services, because those claims generally did not include documentation from which a separately identifiable E/M visit could be discerned. Moreover, Relator Fasso saw instances where it appeared that visits had been cancelled but were still billed. Relator Fasso had received confirmation from the pulmonary medicine group that those appointments had been cancelled but received no response regarding the claims being billed or the lack of documentation. Initially, Green appeared concerned and suggested scheduling a meeting with the pulmonary group to discuss the issue. Soon after, when the pulmonary group was non-responsive, her tone changed and she was no longer supportive of Relator Fasso's objectives.

75. After butting heads with her supervisors over this issue and stating her desire to move to another role rather than to continue submitting false claims, Relator's employment was terminated later in February 2024.

## CONCLUSION

76. Defendants have defrauded Government Healthcare Programs and commercial insurance plans by fraudulently applying Modifier 25 to E/M claims.

77. But for the fraudulent use of Modifier 25, Insurers would not have reimbursed Defendants for the E/M visits with the same date of service as procedures.

78. Defendants knowingly apply Modifier 25 for the purpose of getting claims reimbursed without consideration for whether inclusion of the Modifier is appropriate.

79. Defendants should reimburse the federal and state governments for its ill-gotten gain, trebled, and with penalties.

## COUNT I

## VIOLATIONS OF 31 U.S.C. § 3729
## FEDERAL FALSE CLAIMS ACT

80. Relator hereby incorporates and realleges herein all other paragraphs as if fully set forth herein.

81. As set forth above, Defendants knowingly presented or caused to be presented false or fraudulent claims for payment or approval, in violation of 31 U.S.C. § 3729(a)(1)(A).

82. As set forth above, Defendants knowingly conspired to commit a violation of the False Claims Act, in violation of 31 U.S.C. § 3729(a)(1)(C).

83. As set forth above, Defendants knowingly made, used, or caused to be made or used a false record or statement material to an obligation to pay or transmit money or property to the Government, or knowingly concealed or knowingly and improperly avoided or decreased an obligation to pay or transmit money or property to the Government, in violation of the False Claims Act, 31 U.S.C. § 3729(a)(1)(G).

84. Due to Defendants' conduct, the United States Government has suffered substantial monetary damages and is entitled to recover treble damages and a civil penalty for each false claim. 31 U.S.C. § 3729.

85. Relator is entitled to reasonable attorneys' fees, costs, and expenses. 31 U.S.C. § 3730(d).

## COUNT II

## VIOLATIONS OF CALIFORNIA GOVERNMENT CODE § 12651
## CALIFORNIA FALSE CLAIMS ACT

86. Relator hereby incorporates and realleges herein all other paragraphs as if fully set forth herein.

87. As set forth above, Defendants knowingly presented or caused to be presented to the California Medicaid program false or fraudulent claims for payment or approval, in violation of Cal. Gov't Code § 12651(a)(1).

88. As set forth above, Defendants conspired to commit a violation of the California False Claims Act, in violation of Cal. Gov't Code § 12651(a)(3).

89. As set forth above, Defendants knowingly made, used, or caused to be made or used a false record or statement material to an obligation to pay or transmit money or property to the California Medicaid program, or knowingly concealed or knowingly and improperly avoided or decreased an obligation to pay or transmit money or property to the California Medicaid program, in violation of Cal. Gov't Code § 12651(a)(7).

90. As set forth above, Defendants were beneficiaries of an inadvertent submission of a false claim, subsequently discovered the falsity of the claim, and failed to disclose the false claim to the California Medicaid program within a reasonable time after discovery of the false claim, in violation of Cal. Gov't Code § 12651(a)(8).

91. Due to Defendants' conduct, the state of California has suffered substantial monetary damages and is entitled to recover treble damages and a civil penalty for each false claim, record, or statement. Cal. Gov't Code § 12651(a).

92. Relator is entitled to reasonable attorneys' fees, costs, and expenses. Cal. Gov't Code § 12652(g).

## COUNT III

### VIOLATIONS OF NEVADA REVISED STATUTE ANNOTATED § 357.040 SUBMISSION OF FALSE CLAIMS TO STATE OR LOCAL GOVERNMENT

93. Relator hereby incorporates and realleges herein all other paragraphs as if fully set forth herein.

94. As set forth above, Defendants knowingly presented or caused to be presented to the Nevada Medicaid program false or fraudulent claims for payment or approval, in violation of Nev. Rev. Stat. Ann. § 357.040(1)(a).

95. As set forth above, Defendants conspired to commit a violation of the Nevada Submission of False Claims to State or Local Government, in violation of Nev. Rev. Stat. Ann. § 357.040(1)(i).

96. As set forth above, Defendants knowingly made, used, or caused to be made or used a false record or statement material to an obligation to pay or transmit money or property to the Nevada Medicaid program, or knowingly concealed or knowingly and improperly avoided or decreased an obligation to pay or transmit money or property to the Nevada Medicaid program, in violation of Nev. Rev. Stat. Ann. § 357.040(1)(g).

97. As set forth above, Defendants were beneficiaries of an inadvertent submission of a false claim, subsequently discovered the falsity of the claim, and failed to disclose the false claim to the Nevada Medicaid program within a reasonable time after discovery of the false claim, in violation of Nev. Rev. Stat. Ann. § 357.040(1)(h).

98. Due to Defendants' conduct, the State of Nevada has suffered substantial monetary damages and is entitled to recover treble damages and a civil penalty for each false claim, record, or statement. Nev. Rev. Stat. Ann. § 357.040(2).

99. Relator is entitled to reasonable attorneys' fees, costs, and expenses pursuant to Nev. Rev. Stat. Ann. § 357.180.

## COUNT IV

## VIOLATIONS OF CALIFORNIA INSURANCE CODE § 1871.7
## CALIFORNIA INSURANCE FRAUD PREVENTION ACT

100. Relator hereby incorporates and realleges herein all other paragraphs as if fully set forth herein.

101. As set forth above, Defendants knowingly made, caused to be made, or aided, abetted, or conspired to be made, false or fraudulent claims for payment of healthcare benefits in violation of California Penal Code § 550(a)(6).

102. As set forth above, Defendants knowingly presented, or aided, abetted, or conspired to be presented, multiple claims for payment of the same health care benefit—i.e., E/M services included in the bundled procedure codes—with an intent to defraud in violation of California Penal Code § 550(a)(8).

103. Commercial Insurers, unaware of the falsity of the claims made or caused to be made by Defendant, paid and continue to pay the claims that would not be paid but for Defendants' conduct.

104. The State of California is entitled to receive from Defendants three times the amount of each claim for compensation Defendants submitted or caused to be submitted in violation of CIFPA. Additionally, the State of California is entitled to a maximum penalty of $10,000 for each and every violation of CIFPA.

**PRAYER FOR RELIEF**

WHEREFORE, Relator prays for judgment against Defendants:

a) awarding the United States treble damages sustained by it for each of the false claims under the federal False Claims Act;

b) awarding the United States a maximum civil penalty for each of the false claims under the federal False Claims Act;

c) awarding the States of California and Nevada treble damages sustained by them for each of the false claims under their respective state False Claims Acts and CIFPA;

d) awarding the States of California and Nevada a maximum civil penalty for each of the false claims under their respective state False Claims Acts and CIFPA;

e) awarding Relator the maximum relator's share from the proceeds of this action and any alternate remedy or the settlement of any such claim;

f) awarding Relator litigation costs, expenses, and reasonable attorneys' fees; and

g) granting such other relief as the Court may deem just and proper.

**DEMAND FOR JURY TRIAL**

Relator hereby respectfully demands trial by jury on all issues and counts triable as of right before a jury.

DATED this 29th day of August 2024

Ari Yampolsky (CA Bar No. 290753)
WHISTLEBLOWER PARTNERS LLP
4 Embarcadero Center, Suite 1400
San Francisco, CA 94111
ari@whistleblower.law
415-707-6855

*Attorney for Relator Amy Fasso*